Filed 12/29/20 In re P.N. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re P.N., a Person Coming Under the Juvenile Law. | B305853 |
| _____ | (Los Angeles County Super. Ct. No. 19CCJP01816B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| J.B., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Lisa Brackelmanns, Juvenile Court Referee. Affirmed.

Suzanne Davidson, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Kim Nemoy, Assistant County Counsel, and David Michael Miller, Deputy County Counsel, for Defendant and Appellant.

J.B. (Mother) appeals from a juvenile court order asserting dependency jurisdiction over her infant son P.N. shortly after the court asserted jurisdiction over P.N.'s older brother—based on evidence the children's father beat Mother with a loaded handgun. We are asked to decide whether substantial evidence supports the juvenile court's finding that P.N. was at substantial risk of being abused or neglected as a result of the parents' domestic violence.

## I.  BACKGROUND

### A.    *The Violent Assault and the Ensuing Dependency Proceedings Regarding P.N.'s Sibling*

On February 19, 2019, Mother called 911 to report a violent attack by Father. Mother, then pregnant with P.N., told responding deputies from the Los Angeles County Sheriff's Department that a verbal argument with Father escalated into physical violence. Specifically, while Mother was holding her three-month old son K.N., Father hit her twice with a handgun (later found to be loaded), once in the leg and once in the forehead, knocking her to the floor. Then, when Mother was down on the ground, Father punched Mother multiple times before fleeing the scene. The sheriff's deputies observed a cut on Mother's right leg and swelling on her forehead.

Shortly thereafter, the Los Angeles County Department of Children and Family Services (the Department) filed a petition asking the juvenile court to assume dependency jurisdiction over K.N. (P.N., the child at issue in this appeal, had not yet been born.) When interviewed by a Department social worker, Mother confirmed several aspects of the domestic violence episode as reported by the responding deputies, but she denied Father

3

struck her with a handgun, caused the cut on her leg, knocked her to the floor, or caused swelling to her forehead. Mother also claimed there had not been any prior physical abuse between her and Father.[1]

In mid-September 2019, the juvenile court sustained the petition's allegation that K.N. was at substantial risk of suffering serious physical harm as a result of the domestic violence between Mother and Father. The court removed K.N. from Father's care and released him to Mother. The court ordered Father to stay away from Mother and K.N. and directed Father to participate in a 52-week domestic violence counseling program.[2]

### B.     P.N.'s Dependency Petition and Subsequent Proceedings

Mother gave birth to P.N. in September 2019, less than three weeks after the juvenile court sustained the dependency petition for K.N. Within days of his birth, the Department began an investigation after receiving a referral alleging general neglect of P.N. by his parents.

---

[1]     As Mother acknowledges in her opening brief in this court, a subsequent report prepared by the Department, discussed *post*, would contradict this assertion.

[2]     Four days later, Father pled no contest to a misdemeanor charge of domestic violence (Pen. Code, § 273.5). The trial court placed Father on probation for three years, instructed him to adhere to the terms of a criminal protective order, and, consistent with his juvenile court case plan, ordered him to complete 52 weeks of domestic violence counseling.

4

A social worker spoke to another social worker working at the hospital where P.N. was born (and where he remained for a time, suffering from respiratory distress syndrome). The hospital social worker said she received a call from Mother in mid-October (i.e., after the dependency court assumed jurisdiction over P.N.'s brother and ordered no contact between Mother and Father). During that call, Mother asked if she and Father could visit P.N. together. When the hospital social worker said no, Mother got upset and hung up the phone abruptly.

The investigating social worker also interviewed Mother by phone. Mother told the social worker that Father's "whereabouts are unknown" and refused to provide contact information for him. When the social worker asked if Father was enrolled in court-ordered services, however, Mother said Father was enrolled in classes but she could not recall which ones. The social worker went to Father's last known address but did not find him there and was otherwise unable to reach him.

On October 30, 2019, the Department petitioned for dependency jurisdiction over P.N. The three-count petition included one count alleged under Welfare and Institutions Code section 300, subdivision (j).[3] That count, count j-1, alleged the court had assumed jurisdiction over P.N.'s brother as a result of "the mother and father engaging in a violent altercation and the mother's failure to protect [P.N.'s brother]." The j-1 count further alleged P.N. was at substantial risk of neglect or abuse as a result of this same violent conduct and the failure to protect from violence. At an initial hearing on the petition, the juvenile court

---

[3]     Undesignated statutory references that follow are to the Welfare and Institutions Code.

detained P.N. from Father and released him to Mother pending further dependency proceedings.

The Department submitted a report in advance of the jurisdiction and disposition hearing. It summarized the salient facts of Father's violent attack on Mother in February 2019 and further revealed there had been "another occasion" (no date provided) when Mother and Father were arguing and Father choked Mother while P.N.'s brother was nearby. Mother did not call the police when this other episode of domestic violence occurred.

The Department's jurisdiction report also recounted the particulars of another interview with Mother and highlighted facts that led the Department to suspect she was still in contact with Father. When Mother spoke with a Department investigator, she denied (contrary to evidence) that there was a restraining order against Father. She also stated, contrary to the police report for the earlier attack in February 2019, that Father did not pull out a gun during that attack. Mother additionally claimed Father had never met P.N. and she had no current contact information for Father. The jurisdiction report further detailed a visit by Department personnel to Mother's home: a three-bedroom, two-bathroom apartment in a gated complex (which prevented unannounced visits). Mother declined to permit the Department to inspect one of the locked bedrooms during the visit (she claimed it was her roommate's who was not home) and men's shoes were observed in the other bedrooms.[4]

---

[4] The apartment was a two-story apartment, and when the visiting social worker and Mother were downstairs, the social worker could hear someone walking around upstairs. When the social worker pointed this out, Mother sent a text message on her

6

Although the Department remained uncertain of Father's whereabouts and expressed concern Mother was in communication with Father, the report stated the Department had not been able to confirm its suspicions.

According to the jurisdiction report, P.N. appeared "healthy and developmentally on target" and Mother was actively participating in her existing case plan by attending domestic violence, parenting, and anger management counseling. The Department recommended the court assume jurisdiction over P.N., leave him in Mother's custody, but detain him from Father who still had not made contact with the Department.

### C.     *The Jurisdiction Hearing*

In mid-January 2020—just four months after the juvenile court sustained the dependency petition concerning P.N.'s older brother—the court held a jurisdiction hearing to consider the dependency petition filed for P.N. The court received the pertinent Department reports in evidence, plus a letter offered by Mother from her counseling agency that stated she had "truly been a good client" who regularly participated in all of her classes and who continued to participate in a parenting class even after she completed the course of instruction.

Arguing the matter, counsel for P.N. recommended the court sustain the section 300, subdivision (j) count in the petition, the Department asked the court to sustain the petition in full,

---

phone and the noises stopped. Mother then said she needed to feed the children and ended the visit. In June 2019, Father had applied for food stamps and listed Mother's address as his mailing address.

and Mother requested the court dismiss the petition in its entirety. The juvenile court sustained only the section 300, subdivision (j) count, with an amendment by interlineation to remove an express reference to Mother failing to protect P.N.'s brother.[5] In brief remarks after announcing its decision to sustain the j-1 count, the court said: "I do think [Father] is dangerous and should not be exposed to these children. And [Mother] is going to continue to submit to the jurisdiction of the court. She's already doing the case plan on the sibling and she does seem to really be making strides in her case plan."

## II. DISCUSSION

The juvenile court's exercise of section 300, subdivision (j) jurisdiction over P.N. was appropriate. Ample precedent establishes domestic violence between parents in the presence of a child can provide a proper basis for jurisdiction under section 300, subdivision (b)(1), and there is accordingly no dispute that P.N.'s sibling (K.N.) was abused or neglected—which is the first element of a section 300, subdivision (j) showing. There is also substantial evidence supporting the juvenile court's finding on the second element of a subdivision (j) showing, namely, that P.N. himself was at substantial risk of neglect or abuse at the time of the jurisdiction hearing. P.N. was the same gender and very close to the same age as his older brother, the earlier violence between the parents was particularly egregious (involving a

---

[5] As amended, the j-1 count alleged P.N. was at risk of harm due to Father's violence against Mother in the February 2019 incident and because Mother allowed Father to reside in her home and have unlimited access to P.N.'s brother.

8

highly dangerous assault with a loaded firearm that erupted while Mother was holding P.N.'s then-infant brother), and there was good reason for the juvenile court to believe Mother had not abandoned any desire to remain in contact with Father.

###### A.    *Applicable Law and Standard of Review*

Section 300, subdivision (j), authorizes a juvenile court to assume dependency jurisdiction over a child when the following two requirements are met: "[t]he child's sibling has been abused or neglected, as defined in subdivision [(b)(1) or other subdivisions],[6] and there is a substantial risk that the child will be abused or neglected, as defined in those subdivisions."  Section 300, subdivision (j) states courts should consider, when deciding whether to assert jurisdiction, the age and gender of each child, the nature of the abuse or neglect of the sibling, the mental condition of the parent or guardian, and any other factors the court considers probative in determining whether there is a substantial risk to the child.  (§ 300, subd. (j).)

"The broad language of [Section 300,] subdivision (j) clearly indicates that the trial court is to consider the totality of the circumstances of the child and his or her sibling in determining whether the child is at substantial risk of harm, within the meaning of *any* of the subdivisions enumerated in subdivision (j).

---

[6]    Under section 300, subdivision (b)(1), a child is a dependent child when "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child . . . ."  (§ 300, subd. (b)(1).)

9

The provision thus accords the trial court greater latitude to exercise jurisdiction as to a child whose sibling has been found to have been abused than the court would have in the absence of that circumstance.' [Citation.]" (*In re I.J.* (2013) 56 Cal.4th 766, 774 (*I.J.*).) "The more severe the type of sibling abuse, the lower the required probability of the child's experiencing such abuse to conclude the child is at a substantial risk of abuse or neglect under section 300. If the sibling abuse is relatively minor, the court might reasonably find insubstantial a risk the child will be similarly abused; but as the abuse becomes more serious, it becomes more necessary to protect the child from even a relatively low probability of that abuse." (*Id.* at 778.)

When undertaking our review of the juvenile court's jurisdiction findings under Section 300, subdivision (j) in this case, "'we determine if substantial evidence, contradicted or uncontradicted, supports them.'" (*I.J.*, *supra*, 56 Cal.4th at 773.)

> *B.*      *There Is No Dispute That Dependency Jurisdiction Over P.N.'s Brother Was Proper, and Substantial Evidence Supports the Finding of a Continued Substantial Risk to P.N. Himself*

P.N.'s older brother was found to have been neglected by his parents as defined by section 300, subdivision (b), based on the Father's violent attack on Mother in February 2019. No party to this appeal argues otherwise. The sole contested issue, therefore, is whether P.N. remained at substantial risk of abuse or neglect at the time of the jurisdiction hearing.

The factors section 300, subdivision (j) requires a court to consider when deciding whether jurisdiction is appropriate all support the juvenile court's decision here. P.N. and his brother

10

were very close in age, still quite young, and the same gender. The nature of the abuse and neglect of P.N.'s brother was egregious—a violent assault on Mother that knocked her to the floor while holding K.N. and involved a loaded firearm—and that means it was incumbent on the juvenile court to protect P.N. "from even a relatively low probability" (*I.J.*, *supra*, 56 Cal.4th at 778) of similar abuse or neglect. Though Mother argues that probability was non-existent because the parents were no longer in contact and there was accordingly no evidence that the domestic violence was in her words "ongoing and likely to continue," we see the record quite differently—especially through the substantial evidence lens.

Even after Father was restrained from having no contact with Mother (during the dependency proceedings involving P.N.'s brother), Mother still expressed interest in visiting P.N. in the hospital with Father and she continued to minimize the severity of Father's earlier handgun attack when interviewed by the Department. This is evidence that Mother had not abandoned any desire to see Father, including in P.N.'s presence. Even more than mere desire, there was also evidence suggesting Father and Mother may be occasionally cohabitating (or at least talking) in violation of the restraining order: Father's use of Mother's address as his mailing address, the suspicious circumstances of the Department's home visit, and Mother's claim to know that Father had enrolled in some court-ordered services. With no evidence Father had completed domestic violence programs ordered as part of his case plan (or even made contact with the Department at all), we are satisfied the requisite substantial risk to P.N. remained and the juvenile court appropriately invoked its section 300, subdivision (j) jurisdiction.

DISPOSITION

The juvenile court's jurisdiction findings are affirmed.


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS



BAKER, Acting P. J.


We concur:



MOOR, J.



KIM, J.